# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO
### ALBUQUERQUE

In Re: Kathleen Anne Dudley,          Bankruptcy Case No.: 24-10034-j11
    Debtor.

**************************************************************

**Ilene J. Lashinsky, US Trustee,**    **United States Bankruptcy Case #:**
    **Plaintiff,**                       **Adversary No. 24-01011-j**

**v.**                           **United States District Court Case:**
                               **No. 24-cv-00949-DHU-KK**

**Charles Edward Lincoln, III,**
    **Respondent/Defendant.**    **Demand for Trial-by-Jury**

**************************************************************

## PRELIMINARY OBJECTIONS TO PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION TO CONSOLIDATE WITH 1:24-cv-00962-DHU, GBW, and RULE 72(b)(3) MOTION to SCHEDULE EVIDENTIARY HEARING

1.    Defendant, Charles Edward Lincoln, III, joined by proposed intervenors Marcie Salmon and Alexander G. Fedorov ("Intervenors"), respectfully object to the Proposed Findings and Recommended Disposition (hereinafter "PFRD") filed and entered by the Honorable Magistrate Judge Kirtan K. Khalsa on July 31, 2025.

2.    Defendant and Intervenors move for entry of a scheduling order in this court, and request a full evidentiary hearing before the District Court on both of Defendant's 28 U.S.C. §157(d) Motions to Withdraw, and that these motions be consolidated (Cases 1:24-cv-00949-DHU-KK, and 1:24-cv-00962-DHU-GBW,

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

allowing time for jurisdictional discovery (as previously requested in 1:24-ap-01023-j and 1:24-cv-00962-DHU-GBW), and at least 60 days to complete filing all interventions and then to file Defendants' Counterclaim and Third-Party Complaint in this Court, in cooperation with all intervenors.

3.      Defendant and Intervenors move and request that this Court:

   a.      Deem that Robert H. Jacobvitz' expanded general stay, announced and entered on August 21-22, 2025, in the face of Defendant's Motion to Lift Stay to permit intervenors to join in his Counterclaim and Third-Party Complaint (CCTPC) effectively, equitably, legally and practically constituted as a recommendation of withdrawal for the resolution of all issues, both threshold and final, to the United States District Court.

   b.      Reject Judge Khalsa's (and Judge Wormuth's) PFRD(s) on due process and constitutional grounds;  Consolidate Case Nos. 24-cv-00949-DHU-KK and 24-cv-00962-DHU-GBW;

   c.      Set a full evidentiary hearing pursuant to Fed. R. Civ. P. 72(b)(3); and

   d.      Permit filing of a Counterclaim and Third-Party Complaint addressing the constitutional and antitrust issues central to these proceedings.

   e.      Find that Judge Khalsa's and Judge Wormuth's PFRDs were both issued without adequate notice, without hearing, and even though the Plaintiff Wormuth's case remained in total procedural default.

   f.      Find and order that these defects—combined with the substantial constitutional questions raised—require Article III adjudication and a trial-by-jury of all questions of fact, and mixed questions of law and fact.

## I.    CONDENSED PROCEDURAL HISTORY (All Four Coordinated Cases)

Defendant submits it will lead to manifest injustice to treat any of his FOUR closely related cases in isolation and for that reason proposes consolidation.

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

Defendant refers herein to his cases **by numbers in order of filing as follows:**

**Case #1- April 3, 2024 (Case No. 24-ap-01011-j):**
U.S. Trustee filed Complaint under 11 U.S.C. §110

**Case #2 - April 8, 2024 (Case No. 24-ap-01023-j):**
New Mexico Disciplinary Board filed parallel petition based on identical facts.

**Case #3 – September 20-25, 2024 (Case No. 24-cv-00949-DHU-KK)**
First Motion to Withdraw Order of Reference in 24-ap-01011-j

**Case #4 – September 27, 2024 (Case No. 24-cv-00962-DHY-GBW**
Second Motion to Withdraw Order of Reference in 24-ap-01023-j

**ALL OF THESE CASES ARISE FROM PRECISELY THE SAME COMMON NUCLEUS OF OPERATIVE LAW AND FACT CONCERNING ALLEGATIONS OF "THE UNAUTHORIZED PRACTICE OF LAW"--- These cases can only be justly adjudicated as one single unitary litigation and trial-by-jury.**

Case #1: July 17, 2024
Answer with Affirmative Defenses, Motion to Dismiss, & Skeletal Counterclaims filed, in Case No. 24-ap-01011-j

Case #1: July 24, 2024
Stay of all "Non-Threshold" issues ordered by Judge Robert H. Jacobvitz.

-Case #1: July 24, 2024:
Judge Robert H. Jacobvitz stayed all proceedings except threshold issues (Doc. 21).

Case #2- Aug. 9, 2024:
Disciplinary Board Case removed to federal court (24-ap-01023-j).

Cases ##1-4: September 20-27 2024:
Defendant files Motions to Withdraw Order of Reference in 24-ap-01011-j and 24-ap-01023-j to initiate Case #3 24-cv-00949 and Case #4 24-cv-00962; Ilene J. Lashinsky files an opposition in Case #1, eventually, on Judge Jacobvitz' order, in

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

**Page 3 of 25**

Case #3: January 6, 2025
24-cv-00949-Document 6, but Disciplinary Board permanently defaults to both Motions to Withdraw Reference in both Cases ##2 and 4

Case #2---November 1, 2024
Document #19---Defendant moves for jurisdictional discovery and evidentiary hearing in Removal Case (Former Attorney Burnett failed to file in 24-cv-00962).

Case #1---March 2025
Michael Tusken substitutes in as counsel for Yancey Burnett

Case #2---March 2025
Disciplinary Counsel files Motion to Withdraw---never granted

Cases 2-3- Dec. 2024 – July 2025:
Defendant proceeded pro se; no hearings or notice given.

Case #4- July 1, 2025:
Magistrate Judge Wormuth issued PFRD without notice of submission for consideration or any other opportunity to respond (in the complete absence of opposition by any party)

Case #3-- July 31, 2025: Magistrate Judge Khalsa issued second PFRD, also without notice (and only very belated, coerced response from the US Trustee).

Case #1- Aug. 21, 2025: Judge Jacobvitz extended stay of proceedings, effectively barring filing of Counterclaims/Third-Party Complaint or resolution of intervention in the Bankruptcy Court where it was filed, and hence confusing question of Motions to Withdraw Reference to the extent that those motions depend on raising these issues in the CCTPC rather than merely in the Answer, Affirmative Defenses, and Motions to Dismiss.

Cases ##3-4 - Aug. 29, 2025:
Present objections filed.

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

## II.    PROCEDURAL DUE PROCESS VIOLATIONS

4.    Defendant begins his specific objections to Magistrate Judge Kirtan K. Khalsa's July 31 [Document 11] Proposed Findings and Recommended Disposition *in medias res* on Page 6 of 12 of the PFRD:

> As the Trustee points out, "'[t]he constitutionality and enforceability of Section 110 have been upheld by every court that has been called upon to decide the issue.'" (Doc. 6 at 13 (quoting *McDow v. We the People Forms and Serv. Centers*, *Inc., et al*. (*In re Douglas*), 304 B.R. 223, 238 (Bankr. D. Md. 2003) (collecting cases)).) Defendant offers no response to this argument and has otherwise failed to demonstrate that anything more than routine application of First and/or Ninth Amendment law to the facts of this case is required.

5.    Judge Jacobvitz never clearly articulated that his July 24, 2024, stay of proceedings would not apply in District Court until the status conference just held on Thursday, August 21, 2025, and so Lincoln submits that he did not know that he was required or even allowed to file a Reply to Plaintiff's [Document 6] Judge ordered opposition to his Motion to Withdraw the Reference in this case until then.

6.    By that standard, Plaintiff in 1:24-ap-01023-j/1:24-cv-00962-DHU-GBW is now in its twelfth month of total procedural default, and the Motion to Withdraw the reference really should be granted in that case (and the Plaintiff Disciplinary Board has not even filed an opposition to the Motions to Intervene in that case).

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

7.    The issuance of two PFRDs without notice, hearing, or opportunity to respond violates fundamental due process. Prior to July 1, 2025, Defendant reasonably believed—based on Judge Jacobvitz' stay—that all "non-threshold" proceedings were suspended.

8.    Judge Jacobvitz only clarified on August 21, 2025, that his stay did not apply in District Court at all, so he clearly understood the possibility of confusion.

9.    Entry of dispositive recommendations under those circumstances deprived Defendant and Intervenors of any meaningful opportunity to be heard, especially given that Defendant had already moved for jurisdictional discovery and a hearing in 24-ap-01023-j (Document 19, November 1, 2024).

10.    Circumstances such as those at bar, where a self-represented litigant lacks actual notice of consideration of a matter on only the most general reference after a half-year of inaction warrant rejection of the magistrate's recommendations:

> 'The fundamental requisite of due process of law is the opportunity to be heard.' ***Grannis v. Ordean***, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363. This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.

***Mullane v. Cent. Hanover Bank & Tr. Co.***, 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950).

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

**Page 6 of 25**

11.    Further:

>An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357; *Grannis v. Ordean*, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363; *Priest v. Board of Trustees of Town of Las Vegas,* 232 U.S. 604, 34 S.Ct. 443, 58 L.Ed. 751; Roller v. Holly, 176 U.S. 398, 20 S.Ct. 410, 44 L.Ed. 520. The notice must be of such nature as reasonably to convey the required information, *Grannis v. Ordean*, supra, and it must afford a reasonable time for those interested to make their appearance, Roller v. Holly, supra, and cf. *Goodrich v. Ferris,* 214 U.S. 71, 29 S.Ct. 580, 53 L.Ed. 914.

*Mullane v. Cent. Hanover Bank & Tr. Co.,* (*supra*) 339 U.S. 314.

## III. MANDATORY WITHDRAWAL UNDER 28 U.S.C. §157(d)

12.    Section 157(d) requires withdrawal where resolution demands "substantial and material consideration of non-bankruptcy federal law[1]."

---

[1]    Under 28 U.S.C.A. § 157(d), the district court must withdraw a proceeding referred to a bankruptcy judge if resolution of the proceeding requires consideration of both Title 11 (the Bankruptcy Code) and other federal laws regulating organizations or activities affecting interstate commerce.

This provision establishes the statutory basis for mandatory withdrawal when substantial and material consideration of non-bankruptcy federal law is required (28 U.S.C.A. §  157).

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

13.    Defendant's Answer (Document 68) and Motion to Dismiss (Document 72)

squarely presents:

- First Amendment challenges to §110 and the state-bar monopoly;

---

**Case Law Defining "Substantial and Material Consideration"**

In the Tenth Circuit, the case *In re Westmoreland Coal Co*. 28 U.S.C.A. § 157 provides significant guidance on the interpretation of mandatory withdrawal under (*In re Westmoreland Coal Co.*, 221 B.R. 512 (D. Colorado, 1998)). It establishes that mandatory withdrawal is required if the district court can affirmatively determine that resolution of the claims will necessitate substantial and material consideration of federal statutes other than the Bankruptcy Code (such as, here, Lincoln's assertion of Antitrust and Civil Rights justification for both Affirmative Defenses and Motions to Dismiss (which he submits can ONLY be addressed to and resolved in an Article III Court.

Further, the court in *In re Westmoreland Coal Co., supra,* clarified that substantial and material consideration exists when the determination of issues requires significant interpretation of federal law that Congress would have intended to be decided by a district judge rather than a bankruptcy judge. Additionally, mandatory withdrawal is appropriate when issues arising under non-title 11 laws dominate those arising under Title 11---as Lincoln contends they clearly do for a just adjudication of his case (four cases which must be consolidated into one, upon withdrawal of the reference which IS mandatory).

In the Southern District of New York, Courts have held that Mandatory withdrawal is narrowly applied and is appropriate when **"substantial and material potential conflicts exist between non-bankruptcy federal laws and Title 11"** (*In re Recoton Corp*., 2004 WL 1497570, at *3 (S.D.N.Y. July 1, 2004), quoting K*eene Corp. v. Williams Bailey & Wesner, L.L.P. (In re Keene Corp.)*, 182 B.R. 379, 382 (Bankr. S.D.N.Y. 1995))" "The district court has no discretion to deny withdrawal of the reference..."

Defendant Lincoln and Intervenors agree that the District Court in THIS case "has no discretion to deny withdrawal of the reference."

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

Page 8 of 25

- Fifth Amendment self-incrimination challenge to 11 U.S.C. §110;

- Ninth and Fourteenth Amendment liberty and equal protection claims; and

-Antitrust issues under the Sherman Act.

14.     The bankruptcy court lacks constitutional competence to adjudicate these questions (especially without the consent of the parties, and Defendant has articulated his lack of consent from the beginning, together with his demand for a trial-by-jury and Motion to Withdraw the Reference).

15.     Withdrawal is not discretionary; it is mandatory.

## IV. CONSTITUTIONAL ISSUES IN OUTLINE

16.     First Amendment – 11 U.S.C. §110 compels speech and disclosure by bankruptcy preparers, imposing on honest bankruptcy preparers a Federal obligation to self-incriminate themselves under STATE law for conduct which would otherwise be Federally protected expressive and associative activity BECAUSE THE PRACTICE OF LAW CANNOT BE CONSTITUTIONALLY DEFINED as involving anything less than the full range of activities and conduct protected from congressional interference (such as 11 U.S.C. §110) by the First Amendment. See Exhibit A, opinion of the Supreme Court of Montana.

17.     Fifth Amendment – §110 mandates self-incrimination by forcing

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

**Page 9 of 25**

individuals to sign and disclose personal identifiers in connection with only vaguely defined aspects of lawful advocacy in the provision of services.

18.      Ninth and Fourteenth Amendments – Reserved liberties, including freedom of association and petition, are abridged when "practice of law" is monopolized by a state-sanctioned guild; conditioning full access to all First Amendment rights on membership in a state mandated bar amounts to a "closed shop" rule.

**Federal Prohibition of Closed Shop Agreements**

19.      Under federal law, "closed shop" agreements, which require union membership as a condition of employment, are explicitly prohibited. However, less stringent union-security arrangements, such as "union shop" and "agency shop" agreements, are permitted under certain conditions, unless prohibited by state law.

20.      The permissibility of these arrangements is governed by Sections 8(a)(3) and 14(b) of the National Labor Relations Act ("NLRA"), as amended by the Taft-Hartley Act of 1947.

21.      In the case of the bar association, the "closed shop" is coextensive with the third-branch of government.

22.      The NLRA, as amended by the Taft-Hartley Act, explicitly bans closed shop agreements. Section 8(a)(3) of the NLRA states that it is an unfair labor practice

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

for an employer to require union membership as a condition of employment prior to hiring.

### FIRST AMENDMENT CONUNDRUM (contradiction inherent: CLOSED SHOP BAR COURTS OPERATE AS BUREAUS OF CENSORSHIP but NON-LAWYERS ARE EXCLUDED FROM FULL FIRST AMENDMENT BECAUSE THEY CANNOT BE CENSORED

23.    This prohibition reflects Congress's intent to eliminate the most serious abuses of compulsory unionism associated with closed shops, which were deemed to create excessive barriers to free employment (*Michigan State AFL-CIO v. Callaghan,* 15 F.Supp.3d 712 (2014))

24.    The closed shop nature of the bar is a problem compounded by the fact that Courts have consistently held that an attorney's first duty is to the court rather than to their clients.

25.    This principle is rooted in the attorney's role as an officer of the court, which imposes obligations of candor, loyalty, and integrity to ensure the proper functioning of the justice system.

26.    Note: Candor, loyalty, and integrity may in certain stances all be quite mutually exclusive.

### Duty of Attorneys as Officers of the Court

27.    Several courts have emphasized that attorneys owe a primary duty to the

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

**Page 11 of 25**

court and the administration of justice. Obviously, this means that Judges and Courts have the right to censor what lawyers say on behalf of their clients.

28.    For example, the United States District Court for the District of Minnesota stated that attorneys are officers of the court, and their first duty is to the administration of justice (*Van Berkel v. Fox Farm and Road Machinery*, 581 F.Supp. 1248 (D. Minnesota, 1984)) [and the concept of "administration of justice" is about as vague, flexible, and subjective from the standpoint of language as "the practice of law"---it is simply a license for judges to suppress inconvenient legal expression and advocacy---such as Defendant Lincoln's].

29.    Similarly, the United States Court of Appeals for the Seventh Circuit held that an attorney's duty to the court is paramount, even over the interests of their client (*Steinle v. Warren,* 765 F.2d 95 (7th Circuit, 1985)).

**Duty of Candor and Loyalty to the Court = Censorship**

30.    The United States Bankruptcy Court for the Southern District of Florida and the United States Court of Appeals for the Eleventh Circuit have both articulated that attorneys owe a duty of complete candor and primary loyalty to the court before which they practice. These courts have clarified that an attorney's duty to their client can never outweigh their responsibility to ensure the smooth functioning of

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

**Page 12 of 25**

the justice system (***In re Creative Desperation Inc***., 415 B.R. 882 (SD Fla. 2009)).

**Broader Professional Obligations (furthering vague, undefinable censorship):**

31.    Other courts have highlighted the broader and conflicting professional obligations of attorneys.  The United States Bankruptcy Court for the Northern District of Georgia noted that a debtor's attorney has a professional duty to the bar, the court, and the integrity of the legal system, which is higher than their duty to the client (***In re Armwood***, 175 B.R. 779 (1994)). Nearby, the United States Court of Appeals for the Eleventh Circuit has stated that a lawyer's duties as a member of the bar and officer of the court are generally greater than their duties to the client (***Sahyers v. Prugh, Holliday & Karatinos, P.L.,*** 560 F.3d 1241 (2009)).

32.    Defendant Charles Edward Lincoln III and the Intervenors contend that the highest duty of all participants in the exercise of First Amendment rights, including those who use the Courts to Petition for Redress of Grievances, should be to the dialectically studied pursuit of truth (in the context of adversarial interests) and the use of dialogue and procedures to improve the just and fair implementation of law.

33.    And for this reason alone, freedom of contract of agency must be allowed, as is outlined in Lincoln's proposed Petition for the Definition of Counsel (See Exhibit B).

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

**Page 13 of 25**

34.    As stated above, Defendant objects to Magistrate Judge Khalsa's finding that Defendant's Motion to Withdraw the Order of Reference on the grounds that he has not yet filed his counterclaim and third-party claim under the Sherman Act.

35.    It should be sufficient that Defendant has raised these issues both in his Motion to Dismiss and his Answer with Affirmative Defenses, but Magistrate Khalsa states:

> Regarding Defendant's argument premised on consideration of the Sherman Act, the Trustee argues that mandatory withdrawal is not proper because Defendant has not yet filed a counterclaim, rendering it entirely speculative whether the Court will, indeed, be required to consider the Sherman Act in resolving the adversary proceeding. (*See* Doc. 6 at 10.) For the reasons that follow, I agree with the Trustee that Defendant has failed to demonstrate that this case qualifies for mandatory withdrawal of the reference.

Case 1:24-cv-00949-DHU-KK, Document 11, Filed 07/31/25 Page 5 of 12.

36.    Defendant WAS waiting to file his Counterclaim and Third-Party Complaint until two things had happened: First, until Judge Jacobvitz lifted or modified the stay on threshold issues, and second, until a "threshold" number of intervenors could have lodged their motions for leave to intervene under Rule 24.

37.    But at that same status conference, held on August 21, 2025, Judge Jacobvitz froze Case #1:24-ap-01011-j so that NOTHING could be filed, including the

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

**Page 14 of 25**

Counterclaim and Third-Party Complaint that were planned for September 30, 2025.

38.    As a result, Defendant will now have to file his Counterclaim and Third-Party Complaint in THIS UNITED STATES DISTRICT COURT in order to secure his standing to Withdraw the Order of Reference in Bankruptcy on this basis, according to Magistrate Judge Khalsa's analysis.

## FOUR CASES MUST BE CONSOLIDATED

39.    Just yesterday, Thursday August 28, 2025, in this case, in his Opposition to Intervention, Dan White expressed the confusing problems and overlapping issues which require consolidation in this case:

> All bankruptcy cases in this district, as well as matters arising in or related to a bankruptcy case, such as the Adversary Proceeding, are referred to Bankruptcy Court. In the Matter of Referral of Bankruptcy Matters to the Bankruptcy Judges, Misc. No. 84-0324 (Order, July 18, 1984). See also Wellness Intern. Network, Ltd. v. Sharif, 575 U.S. 665, 670 (2015). Once a case has been referred to Bankruptcy Court, authority to consider all issues other than withdrawal of the reference lies with the bankruptcy court unless and until the reference is withdrawn.

Case 1:24-cv-00949-DHU-KK, Document 16, Filed 08/28/25, Pages 3-4 of 12.

40.    By his order of August 21-22, 2025, expanding the stay, Judge Jacobvitz has

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

**Page 15 of 25**

rendered it impossible to proceed in this order. Judge Jacobvitz has effectively abandoned this case to the District Court---mandating that this Court assume full responsibility for all issues or else effectively denying Lincoln and the Intervenors due process of law. Of course, to deny Lincoln due process of law would be most convenient for the Plaintiffs in both of the cases against this Defendant and his allies.

41.    In other words, Judge Jacobvitz has effectively FORCED this case into District Court by his global stay of all proceedings, Docs. 89-90 in 24-ap-01011-j.

42.    Due Process – Duplicative proceedings (UST and Disciplinary Board) violate basic fairness and threaten inconsistent outcomes.

43.    Defendant incorporates the following statement as the basis for his challenge to the State Bar Monopoly, established as a Fabian maneuver gradually to censor and suppress freedom of speech by the licensing of all elements of the First Amendment, as extended into bankruptcy court by 11 U.S.C. §110.

> Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law." The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights. See *Duncan v. Louisiana,* 391 U.S. 145, 147–149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). In addition, these liberties extend to certain personal choices central to individual

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

**Page 16 of 25**

dignity and autonomy, including intimate choices that define personal identity and beliefs. See, *e.g.,* **2598 *Eisenstadt v. Baird,* 405 U.S. 438, 453, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Griswold v. Connecticut,* 381 U.S. 479, 484–486, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

The identification and protection of fundamental rights is an enduring part of the judicial duty to interpret the Constitution. That responsibility, however, "has not been reduced *664 to any formula." *Poe v. Ullman,* 367 U.S. 497, 542, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting). Rather, it requires courts to exercise reasoned judgment in identifying interests of the person so fundamental that the State must accord them its respect. See *ibid.* That process is guided by many of the same considerations relevant to analysis of other constitutional provisions that set forth broad principles rather than specific requirements. History and tradition guide and discipline this inquiry but do not set its outer boundaries. See *Lawrence, supra,* at 572, 123 S.Ct. 2472. That method respects our history and learns from it without allowing the past alone to rule the present.

The nature of injustice is that we may not always see it in our own times. The generations that wrote and ratified the Bill of Rights and the Fourteenth Amendment did not presume to know the extent of freedom in all of its dimensions, and so they entrusted to future generations a charter protecting the right of all persons to enjoy liberty as we learn its meaning. **When new insight reveals discord between the Constitution's central protections and a received legal stricture, a claim to liberty must be addressed.**

*Obergefell v. Hodges*, 576 U.S. 644, 663–64, 135 S. Ct. 2584, 2597–98, 192 L. Ed. 2d 609 (2015) (Justice Anthony P. Kennedy) (bold emphasis added).

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

**Page 17 of 25**

44.    So too here: the "unauthorized practice of law" doctrine cannot constitutionally be used as a proxy for fraud or consumer protection when no injury is alleged against any consumer, but the provider himself is deprived of his First Amendment, reserved, and statutory rights (including those to be free from "closed shop" union practices.

45.    Defendant here challenges the federal adoption or endorsement of the state bar monopoly, and contends that 11 U.S.C. §110 merely constitutes a "cover" for federal suppression of First Amendment rights to engage in "the practice of law" by attempting to perpetuate an unconstitutional definition of "the unauthorized practice of law." *In re Douglas*, 304 B.R. 223, 232-233 (Bkrtcy. D. Maryland 2003) (cited by Judge Khalsa's at Document 11, Page 6 of 12  compare *In re Dissolving Commission on the Unauthorized Practice of Law*, 242 P.3d 1292 (2010) (Attached as Exhibit A).

## V. ANTITRUST VIOLATIONS

46.    The coordinated prosecutions by the U.S. Trustee and Disciplinary Board function as an unlawful restraint of trade. By restricting who may engage in core expressive and advisory activity, §110 enforces a monopoly contrary to the Sherman Act.  Because it is an insider controlled monopoly without legislative or

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

Page 18 of 25

executive supervision, and because it operates solely in the suppression of fundamental rights to Freedom of Speech, the state bar monopoly, enforced in bankruptcy and other federal court through 11 U.S.C. §110, and §110's statutory symbiosis with the state bar monopoly, is precisely the type of anti-competitive structure that federal antitrust law forbids.

## VI. INTERVENTION UNDER RULE 24

47.    Proposed Intervenors Salmon and Fedorov satisfy all requirements for intervention as of right:

48.    **Timeliness** – Because of Judge Jacobvitz' stay imposed in Case #1, and because he did not rule on the request for discovery in Case #2 (Document 19, Filed November 1) no discovery has commenced and no proceedings of any real kind have been held---all four cases are in their infancy, and the Magistrate Judges' two PFRDs would abort proceedings almost entirely, without ever having provided Defendant any opportunity to present his side of the case; and Judge Jacobvitz just widened the scope of the stay proceedings of proceedings last week, on August 21-22, 2025.

49.    Legal Interest – Their longstanding professional associations with Lincoln will be directly impaired by any injunction.

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

**Page 19 of 25**

50.    Impairment – Injunction against Lincoln necessarily chills their rights of assembly and petition.

51.    **Inadequate Representation** – Lincoln, as a disbarred lawyer and direct target, cannot fully represent their independent rights.

*52.*    Intervention is therefore mandatory. *See Cahoo v. Fast Enters. LLC*, 536 F. Supp. 3d 146 (E.D. Mich. 2021) (finding that proposed intervenors bear a " 'a '**minimal'** burden of demonstrating that absent intervention, 'that impairment of its substantial legal interest is possible.'"    [emphasis added; internal citation omitted] *Id.* at 159.)

## PRAYER FOR RELIEF

For the foregoing reasons, Defendant and Intervenors respectfully request that this Court:

1.    Deem and Determine that Judge Jacobvitz' expansion of his original (July 24, 2024) stay order, as modified and entered August 21-22 (Documents 89-90) constitute a recommendation of granting the withdrawal of the reference in bankruptcy to this Court.

2.    Reject Magistrate Judge Khalsa's PFRD (Doc. 11).

3.    Consolidate Case Nos. 24-cv-00949-DHU-KK and 24-cv-00962-DHU-

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

GBW.

4.    Set this matter for a full evidentiary hearing pursuant to Fed. R. Civ. P. 72(b)(3).

5.    Permit Defendant to file his Counterclaim and Third-Party Complaint addressing constitutional and antitrust violations.

5.    Grant Salmon and Fedorov leave to intervene as of right under Rule 24, and to permit other intervenors to appear and intervene as a matter of right after them.

6.    Enter a scheduling order discovery, and set this case for trial-by-jury.

7.    Accept these objections in conjunction with Defendant's Memorandum of Points & Authorities with Legal Argument to be submitted on Friday, August 29, 2025, or later, and grant all such other further relief as this Court deems just and proper.

Respectfully submitted,

Friday, August 29, 2025

By: */s/Michael L. Tusken/s/*
**Michael L. Tusken**
**U.S. District Court for the**
**District of New Mexico Bar No. 25-293**
**Law Offices of Michael Tusken**
**Michael@TuskenLaw.com**
**1510 West Whittier Boulevard, #42**
**La Habra, California 90631**
**Telephone: 562-365-9465**
**Facsimile: 562-252-8529**

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

# Exhibit A:

## *In re Dissolving the Commission on the Unauthorized Practice of Law*, 242 P.3d 1292 (Supreme Court of Montana 2010)

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

**Page 23 of 25**

2010 MT 82

356 Mont. 109

**In re DISSOLVING the COMMISSION
ON the UNAUTHORIZED
PRACTICE OF LAW.**

**No. AF 09–0068.**

Supreme Court of Montana.

April 20, 2010.

**Background:** The Commission on the Un-
authorized Practice of Law (CUPL) filed a
petition and memorandum in support of
revision of the Rules on the Unauthorized
Practice of Law. CUPL moved to with-
draw petition and to dissolve the Commis-
sion.

**Holding:** The Supreme Court held that
Court was not authorized to regulate the
unauthorized practice of law.

Motion granted.

Attorney and Client ⬅11(1, 13)

Supreme Court has no constitutional au-
thority to define, generally, what constitutes
the "practice of law," except within the con-
text of a case or controversy properly before
the Court, and, therefore, is not authorized
either directly or through a Commission to
regulate the unauthorized practice of law or
to sanction or remedy the unauthorized prac-
tice of law, except within the context of a
case or controversy properly before the
Court; consumer protection laws and other
statutory schemes could be implicated, non-
human entities could be liable in actions in
law and in equity for their conduct. Const.
Art. 7, § 2(3); MCA 37–61–201.

See publication Words and Phrases
for other judicial constructions and def-
initions.

---

OPINION AND ORDER

¶ 1 On February 4, 2009, the Commission
on the Unauthorized Practice of Law
(CUPL) filed a Petition and Memorandum in
Support of Revision of the Rules on the
Unauthorized Practice of Law (Petition). The
proposed rule changes were attached to the
Petition. On February 19, 2009, this Court
issued its Order submitting the Petition and

proposed rule changes for public comment.
Over the period during which public com-
ment was accepted (February 19, 2009
through April 20, 2009), attorneys, other in-
terested persons, organizations, institutions,
businesses, and local governments filed volu-
minous, thoughtful comments with the Clerk
of this Court. Indeed, we cannot recall a
matter on which there has been more com-
ment by members of the public on a matter
before us. On June 23, 2009, the CUPL filed
its response to the comments and matters
raised therein.

¶ 2 Subsequently, on March 19, 2010, the
CUPL filed its Motion to Withdraw the Peti-
tion and Memorandum in Support and to
Dissolve the Commission (Motion). To this
latter document, the CUPL attached a Mem-
orandum of Understanding entered into on
March 19, 2010, between the State Bar of
Montana and the Attorney General's Office
of Consumer Protection. Under that Memo-
randum of Understanding, the Office of Con-
sumer Protection has agreed to receive, pro-
cess, evaluate, and—in appropriate cases—
assign attorneys to address complaints of
unauthorized practice of law by non-attor-
neys. The Office of Consumer Protection
has further agreed to direct complaints of
unauthorized practice of law by attorneys not
licensed in Montana to the State Bar of
Montana for possible referral to the Office of
Disciplinary Counsel.

¶ 3 We conclude that the CUPL's Motion
should be granted. However, in order to
explain our decision in this regard, we sum-
marize the evolution of this matter following
the filing of the CUPL's Petition.

*Background*

¶ 4 Following the close of the comment
period on the Petition, we carefully studied
and deliberated the comments and the
CUPL's response. As a result of these de-
liberations and consultations with the CUPL,
the State Bar of Montana, and the Montana
Attorney General, we reached several conclu-
sions, which are summarized here.

¶ 5 First, we conclude that this Court is
not authorized either directly or through a
Commission to regulate the "unauthorized

IN RE DISSOLVING COM'N ON UNAUTH. PRAC. LAW    Mont.    **1283**
Cite as 242 P.3d 1282 (Mont. 2010)

practice of law." Article VII, Section 2(3) of Montana's Constitution empowers this Court to "make rules governing appellate procedure, practice and procedure for all other courts, *admission to the bar and the conduct of its members* [subject to the legislature's power to disprove rules which we adopt]" (italics added). Pursuant to this Constitutional scheme, the legislature has historically defined what constitutes the practice of law (§ 37–61–201, MCA) [1] and has charged the executive branch with the duties of investigating and prosecuting the "unauthorized" practice of law (§ 37–61–214, MCA).

¶ 6 Second, we conclude that the array of persons and institutions that provide legal or legally-related services to members of the public are, literally, too numerous to list. To name but a very few, by way of example, these include bankers, realtors, vehicle sales and finance persons, mortgage companies, stock brokers, financial planners, insurance agents, health care providers, and accountants. Within the broad definition of § 37–61–201, MCA, it may be that some of these professions and businesses "practice law" in one fashion or another in, for example, filling out legal forms, giving advice about "what this or that means" in a form or contract, in estate and retirement planning, in obtaining informed consent, in buying and selling property, and in giving tax advice. Federal and state administrative agencies regulate many of these professions and businesses via rules and regulations; federal and state consumer protection laws and other statutory schemes may be implicated in the activities of these professions and fields; and individuals and non-human entities may be liable in actions in law and in equity for their conduct. Furthermore, what constitutes the practice of law, not to mention what practice is authorized and what is unauthorized is, by no means, clearly defined. Finally, we are also mindful of the movement towards nationalization and globalization of the practice of law, and with the action taken by federal authorities against state attempts to localize, monopolize, regulate, or restrict the interstate or international provision of legal services.

¶ 7 Third, we conclude that this Court has no Constitutional authority to define, generally, what constitutes the practice of law, except within the context of a case or controversy properly before this Court. Moreover, it follows that this Court has no Constitutional authority to define the "unauthorized practice of law," again, except within the context of a case or controversy properly before this Court. And, finally, it follows that we have no Constitutional authority, except within the context of a case or controversy properly before this Court, to sanction or remedy the "unauthorized practice of law."

¶ 8 Fourth, we conclude that our proper role in matters involving the practice of law or the unauthorized practice of law is to exercise the authority granted to us under Montana's Constitution. We will hear and determine cases and controversies properly before the Court and we will continue to exercise our exclusive, original jurisdiction to supervise all other courts of Montana and the admission to, and conduct of members of, the bar, pursuant to Article VII, Section 2(1), (2), and (3) of Montana's Constitution. In this regard, we conclude also that it is appropriate that we adopt rules for the regulation of the practice of law in Montana by Montana attorneys in addition to those already adopted, and we will do so by subsequent order.

¶ 9 Fifth and finally, based upon the foregoing, we conclude that the CUPL's instant Motion is well taken and should be granted. In so doing, we acknowledge the excellent, and often frustrating, work of the CUPL over the years, and we thank CUPL co-chairs Carol Bronson and John Connor and all others who have served on the CUPL for their service to this Court and to the people of Montana. We also commend the State Bar of Montana and the Attorney General for their work toward establishing a better way of handling complaints of unauthorized practice of law.

¶ 10 Therefore, good cause having been shown,

¶ 11 IT IS ORDERED that the CUPL's Motion is GRANTED. The CUPL is dis-

---

**1.** The legislature has also enacted other laws under Title 37, Ch. 61, MCA, which are not at    issue here.

**1284** Mont.          **242 PACIFIC REPORTER, 3d SERIES**

solved effective April 20, 2010, and its Petition is dismissed as moot. This Court's February 15, 2000 order adopting rules for the CUPL is vacated and all rules for the CUPL are repealed.

¶ 12 IT IS FURTHER ORDERED that the Clerk of this Court give notice of this Opinion and Order to the co-chairs of the CUPL, to the Attorney General, and to the Executive Director of the State Bar of Montana with the request that notice of this Opinion and Order be published in the next available issue of the *Montana Lawyer*.

¶ 13 IT IS FURTHER ORDERED that this Opinion and Order be published on this Court's website.

/s/ MIKE McGRATH
Chief Justice

/s/ JAMES C. NELSON

/s/ PATRICIA O. COTTER

/s/ MICHAEL E. WHEAT

/s/ W. WILLIAM LEAPHART

/s/ BRIAN MORRIS

/s/ JIM RICE
Justices



# Exhibit B:

**PETITION TO DEFINE "COUNSEL"**
Drafted by Charles Edward Lincoln, III,
On behalf of
LOUISIANA UNITED INTERNATIONAL
And
AMERICA UNITED INTERNATIONAL

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

**Page 24 of 25**

# **PETITION TO DEFINE "COUNSEL"**

Due Process under the Fifth Amendment, to protect each person's rights to life, liberty and property, requires that the right to "counsel" under the Sixth Amendment, be defined so that the right to serve extend to any person agreed by contract of agency, without prior restraint by any law, rule, or customary practice.

Under the First, Seventh, Ninth and Fourteenth Amendments, such definition of "counsel" shall apply in both civil and criminal cases, and shall be construed so that no state may define or authorize "the practice of law" or to grant licenses for, restrict or impose penalties for "the unauthorized practice of law."

**Charles Edward Lincoln, III, July 23, 2025**

# **<u>Exhibit C:</u>**

Letter from Scott Hammond
Deputy Attorney General for Antitrust
April 2009 Letter in Support of
Senator Jerry O'Neil in the
Supreme Court of Montana

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

**Page 25 of 25**

**FILED**

April 20 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

**Antitrust Division**

*Office of the Acting Assistant Attorney General*

*950 Pennsylvania Ave., NW, Suite 3218*
*Washington, D.C. 20530-0001*

April 17, 2009

*via overnight mail*

Montana Supreme Court
Clerk's Office
Room 323, Justice Building
215 N. Sanders
Helena, Montana 59620-3003

**FILED**

**APR 2 0 2009**

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Re:    Comments on Proposed Revisions to the Rules on the Unauthorized
Practice of Law

Dear Honorable Justices:

The Justice Department is pleased to provide comments to the Supreme Court of Montana on the proposal by the Commission on the Unauthorized Practice of Law ("Commission") to revise the rules on the unauthorized practice of law. The proposal would, among other things, add various "indicia" of the practice of law to the existing definition of the unauthorized practice of law. If adopted, the revised definition could bar non-lawyers from competing with lawyers for a range of services and could unnecessarily increase the prices paid by Montanans for those services.[1]

Consumers generally benefit from competition between lawyers and non-lawyers. Accordingly, the Justice Department believes that the definition of the unauthorized practice of law should be limited to activities for which specialized legal knowledge and training is demonstrably necessary to protect consumers and an attorney-client relationship is present. We are concerned that the Commission's proposal, by identifying broad categories of activities that may constitute the practice of law, such as "giving of advice or counsel to others as to their legal rights or responsibilities or responsibility of others," "[s]electing, drafting and completing legal papers, pleadings, agreements and other documents which affect the legal rights or responsibilities of others," and "[n]egotiating the legal rights or responsibilities of others," will unduly restrict non-lawyers from competing with lawyers.[2]

We recognize that, in *Montana Supreme Court Commission on the Unauthorized Practice of Law v. O'Neil*, this Court reviewed the indicia proposed here by the Commission and

---

[1] This letter focuses on the effects of the Commission's proposal on consumer welfare, and does not address whether the revised definition and potential competitive restraints arising from enforcement under it would be immunized from the federal antitrust laws under the state action doctrine.

[2] Revised Rule 2(h).

found them to be precise and readily understood.[3]  However, the indicia could be interpreted to suggest that participation in a wide range of activities constitutes the unauthorized practice of law.  If adopted, the proposed definition could force Montanans to hire a lawyer to provide a host of services where legal expertise should not be necessary, such as:[4]

- real estate agents explaining to consumers such things as the (i) ramifications of failing to have the home inspection done on time, (ii) meaning of a mortgage contingency clause, (iii) meaning of an easement, (iv) possible need to lower the price of a home because of an unusually restrictive easement, or (v) requirements for lead, smoke detector, and other inspections imposed by state law;

- tenants' associations informing renters of landlords' and tenants' legal rights and responsibilities, often in the context of resolving a particular landlord-tenant dispute;

- abstractors or title insurance agents, licensed by the State, issuing real estate title opinions and title reports;

- income tax preparers interpreting federal and state tax codes on behalf of their clients;

- financial institutions, investment bankers, securities brokers and other business planners or advisors providing advice to their clients that includes information about various laws;

- lay organizations, advocates, and consumer associations that provide citizens with information about legal rights and issues and help them negotiate solutions to problems; and

- human resources management and other specialists advising employers about employment discrimination and sexual harassment issues, as well as federal, state and local labor, immigration, zoning, safety and other regulatory compliance issues.

---

[3] 147 P.3d 200, 215 (Mont. 2006).  This Court found that indicia of the practice of law identified by the District Court were "precise, comprehensible to a reasonable person and sufficient to prevent a person of common intelligence from having to guess at their meaning." *Id.*  Here, the Commission proposes that those same indicia be added to the definition of the unauthorized practice of law.

[4] Non-lawyer providers of many services in Montana, including real estate brokers, are licensed and regulated under Title 37 of the Montana Code.  *See* Mont. Code Ann. § 37 (2007).  Depending on how the relevant provisions of the Code are construed, non-lawyers may be permitted to provide some of the services listed here even if the Court adopts the proposed definition of the unauthorized practice of law.

After providing background information and further explanation of our concerns, we suggest that the definition of the unauthorized practice of law be limited to situations where specialized legal skills are required and an attorney-client relationship is present.

### The Interest and Experience of the U.S. Department of Justice and the Federal Trade Commission

The Justice Department is entrusted with enforcing the federal antitrust laws. We work to promote free and unfettered competition in all sectors of the American economy. The United States Supreme Court has observed that "ultimately competition will produce not only lower prices, but also better goods and services. 'The heart of our national economic policy long has been faith in the value of competition.'"[5] Like all consumers, consumers of professional services benefit from competition,[6] and if competition to provide such services is restrained, consumers may be forced to pay higher prices or accept services of lower quality.

The Justice Department is concerned about efforts across the country to prevent non-lawyers from competing with lawyers through the adoption of excessively broad unauthorized practice of law restrictions by state courts and legislatures. Some of these proposals appear to be little more than overt attempts by lawyers to eliminate competition from alternative, lower-cost non-lawyer service providers; others, while appearing to be good faith efforts to protect consumers, have not been tailored narrowly enough to avoid unnecessary harm to competition. In addressing these concerns, the Justice Department encourages competition through advocacy letters and *amicus curiae* briefs filed with state supreme courts. Through these letters and filings, the Justice Department has urged states, the American Bar Association, and state bar associations to reject or narrow proposed restrictions on competition between lawyers and non-lawyers.[7] In

---

[5] *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 695 (1978) (quoting *Standard Oil Co. v. FTC*, 340 U.S. 231, 248 (1951)); *accord FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 423 (1990).

[6] *See, e.g., Prof'l Eng'rs*, 435 U.S. at 689; *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 787 (1975); *see also United States v. Am. Bar Ass'n*, 934 F. Supp. 435 (D.D.C. 1996), *modified*, 135 F. Supp. 2d 28 (D.D.C. 2001).

[7] *See* letters from the Justice Department to the Wisconsin Supreme Court (Oct. 10, 2008, Feb. 28, 2008 and Dec. 10, 2007); letter from the Justice Department and the FTC to the Supreme Court of Hawai'i (Jan. 25, 2008); letters from the Justice Department and the FTC to the Committee on the Judiciary of the New York State Assembly (Apr. 27, 2007 and June 21, 2006); letter from the Justice Department and the FTC to the Executive Director of the Kansas Bar Ass'n (Feb. 4, 2005); letter from the Justice Department and the FTC to the Task Force to Define the Practice of Law in Massachusetts, Massachusetts Bar Ass'n (Dec. 16, 2004); letter from the Justice Department and the FTC to Unauthorized Practice of Law Committee, Indiana State Bar Ass'n (Oct. 1, 2003); letter from the Justice Department and the FTC to the Standing Committee on the Unlicensed Practice of Law, State Bar of Georgia (Mar. 20, 2003); letters from the Justice Department to Speaker of the Rhode Island House of Representatives and to the President of the Rhode Island Senate, *et al.* (June 30, 2003 and Mar. 28, 2003); letter from the Justice Department and the FTC to Task Force on the Model Definition of the Practice of Law, American Bar Ass'n (Dec. 20, 2002); letter from the Justice Department and the FTC to the Speaker of the Rhode Island House of Representatives, *et al.* (Mar. 29, 2002); letter from the Justice Department and the FTC to the President of the North Carolina State Bar (July 11, 2002); letter from the Justice Department and the FTC to the Ethics Committee of the North Carolina State Bar (Dec. 14, 2001); letter from the Justice Department to the Board of Governors of the Kentucky Bar Ass'n (June 10, 1999 and Sept. 10, 1997); letter from the Justice Department and the FTC to the Supreme Court of Virginia (Jan. 3, 1997); letter from the Justice Department and the FTC to the Virginia State Bar

addition, the Justice Department has obtained injunctions prohibiting bar associations from unreasonably restraining competition by non-lawyers in violation of the antitrust laws.[8] Our comments on the Commission's proposal are part of our ongoing efforts in this area.

### Restrictions on Competition Should Be Closely Examined to Determine Whether They Are in the Public Interest

Restrictions on competition generally are harmful to consumers. Such restrictions are in the public interest only if they are needed to achieve some overriding benefit – such as preventing significant consumer harm from the provision of services by providers who lack the requisite knowledge and training – and are narrowly drawn to minimize their anticompetitive impact.[9] The Justice Department recognizes that there are some services that should be provided only by lawyers because they require legal knowledge and training. For example, only someone who understands law and litigation procedures should represent clients in open court in matters involving their legal rights. Such a requirement protects consumers as well as the court. But consumers also benefit when non-lawyers compete with lawyers to provide many other services that do not require legal training, knowledge or skills.[10] Allowing non-lawyers to provide such

---

(Sept. 20, 1996). Brief *Amicus Curiae* of the United States of America and the FTC in *Lorrie McMahon v. Advanced Title Servs. Co. of W. Va.*, No. 31706 (filed May 25, 2004), available at http://www.usdoj.gov/atr/cases/f203700/203790.htm; Brief *Amicus Curiae* of the United States of America and the FTC in On Review of ULP Advisory Opinion 2003-2 (filed July 28, 2003), available at http://www.usdoj.gov/atr/cases/f201100/201197.htm; Brief *Amicus Curiae* of the United States of America in Support of Movants Kentucky Land Title Ass'n et al. in *Ky. Land Title Ass'n v. Ky. Bar Ass'n*, No. 2000-SC-000207-KB (Ky., filed Feb. 29, 2000), available at http://www.usdoj.gov/atr/cases/f4400/4491.htm. The letters to the American Bar Ass'n, Wisconsin, Hawai'i, Indiana, New York, Rhode Island, Massachusetts, North Carolina, Georgia, Kansas, and Virginia may be found on the Justice Department's website, http://www.usdoj.gov/atr/public/comments/comments.htm.

[8] In *United States v. Allen County Bar Ass'n*, the Justice Department sued and obtained a judgment against a bar association that had restrained title insurance companies from competing in the business of certifying titles. The bar association had adopted a resolution requiring lawyers' examinations of title abstracts and had induced banks and others to require the lawyers' examinations of their real estate transactions. Civ. No. F-79-0042 (N.D. Ind. 1980). In *United States v. N.Y. County Lawyers Ass'n*, the Justice Department obtained a court order prohibiting a county bar association from restricting the trust and estate services that corporate fiduciaries could provide in competition with lawyers. No. 80 Civ. 6129 (S.D.N.Y. 1981). *See also United States v. County Bar Ass'n*, No. 80-112-S (M.D. Ala. 1980). In addition, the Justice Department has obtained injunctions against other anticompetitive restrictions in professional associations' ethical codes and against other anticompetitive activities by associations of lawyers. *See, e.g., United States v. Am. Bar Ass'n*, 934 F. Supp. 435; *Prof'l Eng'rs*, 435 U.S 679; *United States v. Am. Inst. of Architects*, 1990-2 Trade Cas. (CCH) ¶ 69,256 (D.D.C. 1990); *United States v. Soc'y of Authors' Reps.*, 1982-83 Trade Cas. (CCH) ¶ 65,210 (S.D.N.Y. 1982).

[9] *Cf. FTC v. Indiana Federation of Dentists*, 476 U.S. 447, 459 (1986) ("Absent some countervailing procompetitive virtue," an impediment to "the ordinary give and take of the marketplace cannot be sustained under the Rule of Reason.") (internal quotations and citations omitted).

[10] "Several jurisdictions recognize that many such [law-related] services can be provided by nonlawyers without significant risk of incompetent service, that actual experience in several states with extensive nonlawyer provision of traditional legal services indicates no significant risk of harm to consumers of such services, that persons in need of legal services may be significantly aided in obtaining assistance at a much lower price than would

services permits consumers to select from a broader range of options, considering for themselves such factors as cost, convenience, and the degree of assurance that the necessary documents and commitments are sufficient. As the United States Supreme Court stated:

> The assumption that competition is the best method of allocating resources in a free market recognizes that *all elements of a bargain - quality, service, safety, and durability* - and not just the immediate cost, are favorably affected by the free opportunity to select among alternative offers.[11]

Sound competition policy calls for any restriction on competition to be justified by a valid need, such as protecting the public from harm, and for the restriction to be narrowly drawn to minimize its anticompetitive impact.[12] The inquiry into the public interest involves not only an assessment of the harm that consumers may suffer from allowing non-lawyers to perform certain tasks, but also consideration of the benefits that accrue to consumers when lawyers and non-lawyers compete.[13]

The Justice Department is not aware of evidence of harm to Montana consumers arising from non-attorneys providing services such as those referenced above that do not require the skill or knowledge of a lawyer. In the absence of such evidence, we believe that the revisions to the definition of the unauthorized practice of law proposed by the Commission unnecessarily limits competition between lawyers and non-lawyers and likely will cause more harm to consumers than it will prevent.

Evidence suggests that lay people can and do competently perform many of the services that the proposed rule could limit to lawyers.[14] Academic research indicates that consumers likely face little risk of harm from non-lawyer competition in many areas. For example, studies of lay specialists who provide bankruptcy and administrative agency hearing representation find

---

be entailed by segregating out a portion of a transaction to be handled by a lawyer for a fee, and that many persons can ill afford, and most persons are at least inconvenienced by, the typically higher cost of lawyer services. In addition, traditional common-law and statutory consumer-protection measures offer significant protection to consumers of such nonlawyer services." Restatement (Third) of Law Governing Lawyers § 4 cmt. c (2000).

[11] *Prof'l Eng'rs*, 435 U.S. at 695 (emphasis added); *accord*, *Superior Court Trial Lawyers Ass'n*, 493 U.S. at 423.

[12] *Cf. FTC. v. Ind. Fed'n of Dentists*, 476 U.S. 447, 459 (1986) ("Absent some countervailing procompetitive virtue," an impediment to "the ordinary give and take of the market place . . . cannot be sustained under the Rule of Reason.") (internal quotations and citations omitted).

[13] *See Prof'l Eng'rs*, 435 U.S. at 689; *Goldfarb v. Va. State Bar*, 421 U.S. 773, 787 (1975). *See also In re Opinion No. 26 of the Comm. on Unauthorized Practice of Law*, 654 A.2d 1344, 1345-46 (N.J. 1995) (lawyer/non-lawyer competition benefits the public interest).

[14] Significantly, a 1999 survey found that in most states complaints about the unauthorized practice of law did not come from consumers, the potential victims of such conduct, but from attorneys, who did not allege any claims of specific injury. Deborah Rhode, *Access to Justice: Connecting Principles to Practice*, 17 Geo. J. Legal Ethics 369, 407-08 (2004).

that they perform as well as or better than lawyers.[15]  Similarly, a study comparing five states where lay providers examined title evidence, drafted real estate-related instruments, and facilitated the closing of real estate transactions with five states that prohibited lay provision of such services found, "The only clear conclusion . . . is that the evidence does not substantiate the claim that the public bears a sufficient risk from lay provision of real estate settlement services to warrant blanket prohibition of those services under the auspices of preventing the unauthorized practice of law."[16]

If non-lawyers were barred from providing the services encompassed by the proposed rule, fees for those services likely would rise.  The potential harm from increasing the cost for these services may deter some consumers from seeking assistance of any kind.  Consumers who otherwise would receive assistance from non-lawyer service providers – tenants' associations, lay organizations, and others – would be forced to choose between hiring a lawyer and going without assistance altogether.  Similarly, a 1996 ABA task force survey concluded that low income and middle-income households were underserved by the legal system, with cost being a major reason why these groups avoided the legal system.[17]

Even Montanans who would choose a lawyer over a lay service provider likely will pay higher prices if the revised definition is adopted.  Evidence gathered in a New Jersey Supreme Court proceeding indicated that, in communities in New Jersey where non-lawyers frequently competed with lawyers to close real estate transactions, buyers represented by counsel paid on average $350 less for closings, and sellers represented by counsel paid $400 less, than in the New Jersey communities where lay closings were not prevalent.[18]  Likewise, the Kentucky Supreme Court concluded that prices for real estate closings by lawyers dropped substantially–by as much as one percent of the loan amount plus fees–as a result of competition from lay title companies, explaining that the lay competitors' presence "encourages attorneys to work more cost-

---

[15] Deborah Rhode, *Access to Justice: Connecting Principles to Practice*, 17 Geo. J. Legal Ethics 369, 407-08 (2004).  *See also* Herbert M. Kritzer, *Legal Advocacy: Lawyers and Non Lawyers at Work* 50-51 (1998) (finding that in unemployment compensation appeals before the Wisconsin Labor and Industry Review Commission, "[t]he overall pattern does not show any clear differences between the success of lawyers and agents").

[16] Joyce Palomar, *The War Between Attorneys and Lay Conveyancers – Empirical Evidence Says "Cease Fire!"*, 31 Conn. L. Rev. 423, 520 (1999).

[17] Am. Bar Ass'n Fund for Justice & Ed., *Legal Needs & Civil Justice: A Survey of Americans* (1996).  The most common legal needs reported by respondents were related to personal finances, consumer issues, and housing. For low- and middle-income households, the most common response to a legal problem was "handling the situation on their own." For low-income households, the second most common response was to take no action at all.  The second-most common response for middle-income households was to use the legal system, including contacts with lawyers, mediators, arbitrators, or official hearing bodies.

[18] *See In re Opinion No. 26 of the Comm. on Unauthorized Practice of Law*, 654 A.2d 1344, 1348-49 (N.J. 1995).

effectively."[19]  And, in Virginia, where the legislature passed a law upholding the right of consumers to continue using lay closing services, proponents of lay competition presented survey evidence suggesting that lay closings in Virginia cost on average $150 less than lawyer closings.[20]

### Restrictions on Lawyer/Non-Lawyer Competition Should Be Limited to Services Provided Pursuant to an Attorney-Client Relationship

The revised definition appears to be overbroad because it could bar non-lawyers from providing services in many instances where it is apparent that specialized legal skills are not required and an attorney-client relationship does not exist.  To preserve competition, and to benefit consumers, the Court should consider adopting language similar to that found in Rule 49 of the District of Columbia Court of Appeals.  Although Rule 49 defines the practice of law, as opposed to the unauthorized practice of law, the reasoning behind it is informative for consideration of a definition of the unauthorized practice of law.  Rule 49 defines the practice of law as "the provision of professional legal advice or services where there is a client relationship of trust or reliance."[21]  The Commentary to Rule 49 makes clear that giving advice or counsel to others as to legal rights or responsibilities is not necessarily the practice of law.  Rather, such services may be the practice of law if they are provided in the context of an attorney-client relationship.  The Commentary explains:

> As originally stated in . . . the prior Rule, the "practice of law" was broadly defined, embracing every activity in which a person provides services to another relating to legal rights.  This approach has been refined, in recognition that there are some legitimate activities of non-Bar members that may fall within an unqualifiedly broad definition of the law.  The definition set forth in section (b)(2) is designed to focus first on the two essential elements of the practice of law: The provision of legal advice or services, and a client relationship of trust or reliance.  Where one provides such advice or services within such a relationship, there is an implicit representation that the provider is authorized or competent to provide them; just as one who provides any services requiring special skill gives an implied warranty that they are provided in a good and workmanlike manner.  . . . The presumption that one's engagement in [an activity] is the 'practice of law' may be rebutted by showing that there is no client relationship of trust or reliance, or that there is no explicit or implicit representation of authority or competence to practice law, or that both are absent.  . . [T]he Rule is not intended to cover conduct which lacks the essential features of an attorney-client relationship. . . . Tax accountants, real estate agents, title company attorneys, securities advisors, pension consultants, and the like, who do not indicate they are providing legal advice or services based on competence and

---

[19] *See, e.g., Countrywide Home Loans, Inc. v. Ky. Bar Ass'n,* 113 S.W.3d 105, 120 (Ky. 2003) ("before title companies emerged on the scene, [the Kentucky Bar Association's] members' rates for such services were significantly higher").

[20] *See* letters to the Virginia Supreme Court and Virginia State Bar, *supra* n.7.

[21] D.C. Court of Appeals Rule 49(b)(2) (2004) (outline letters omitted).

standing in the law are not engaged in the practice of law, because their relationship with the customer is not based on a reasonable expectation that learned and authorized professional legal advice is being given. Nor is it the practice of law under the Rule for a person to draft an agreement or resolve a controversy in a business context, where there is no reasonable expectation that she is acting as a qualified or authorized attorney. . . . [22]

Adding the requirement of an attorney-client relationship and similar commentary to the proposed definition would protect Montana consumers from harm caused by persons engaged in the unauthorized practice of law, while also preserving lawyer/non-lawyer competition that benefits consumers.

<u>Conclusion</u>

The choice of whether to use a lawyer or non-lawyer service provider should rest with the consumer unless it is clear that specialized legal skills or training are required. Lawyer/non-lawyer competition benefits consumers, particularly when there is no evidence that consumers have been harmed by non-lawyer service providers. We urge the Court to revise the proposed definition to preserve competition in service areas for which the knowledge and skill of a lawyer is not required.

The Justice Department thanks you for this opportunity to present our views. We would be pleased to address any questions or comments regarding this letter.

Yours Sincerely,

Scott D. Hammond
Acting Assistant Attorney General

---

[22] *Id.* Commentary on Rule 49(b)(2).

-8-

## <u>CERTIFICATE OF SERVICE</u>

I certify that on Friday, August 29, 2025, I served a true and correct copy of the above-and-foregoing joint

### *Preliminary Objections to Magistrate Judge Khalsa's PFRD entered July 31, 2025.*

filed by counsel by and on behalf of Defendant Charles Edward Lincoln, III, and intervenors Marcie Salmon and Alexander G. Fedorov, on each of the following:

Daniel A. White, Trial Attorney, at dan.white@usdoj.gov
Mary L. Johnson (USTP), at Mary.L.Johnson@usdoj.gov
Christine Elizabeth Long, Deputy Disciplinary Counsel,
clong@nmdisboard.org and jgonzales@nmdisboard.org

Respectfully submitted,

Friday, August 29, 2025

By: */s/Michael L. Tusken/s/*
**Michael L. Tusken**
**U.S. District Court for the**
**District of New Mexico Bar No. 25-293**
**Law Offices of Michael Tusken**
**Michael@TuskenLaw.com**
**1510 West Whittier Boulevard, #42**
**La Habra, California 90631**
**Telephone: 562-365-9465**
**Facsimile: 562-252-8529**

*Defendant's and Intervenors' PRELIMINARY OBJECTIONS with MEMORANDUM of LAW to MAGISTRATE JUDGE KHALSA' PROPOSED FINDINGS and RECOMMENDED DISPOSITION [Document 11] on 07/31/25, MOTION to CONSOLIDATE with 1:24-cv-00962-DHU-GBW, and REQUEST FOR EVIDENTIARY HEARING on the MOTION TO WITHDRAW*

**Page 22 of 25**